# THE UNITED DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUKCY
## CASE NO. _1:23-cv-13-GNS_

**COREY LEA**

**Transfer of Contractual Rights to
Plaintiff Corey Lea From USDA**

**FILED**

JAMES J. VILT, JR. - CLERK

JAN 3 1 2023

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**V.**

**FIRST BANK
LARRY HINTON**

## ORIGINAL COMPLAINT

## VENUE AND JURISDICTION

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and § 1332 because

   this case concerns whether the U.S. Dept. of Agriculture (USDA) and its officials acted

   in compliance with the Administrative Procedure Act (APA) and other federal laws.

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1343 because the district

   courts shall have original jurisdiction of any civil action authorized by law to be

   commenced by any person.

3. This Court has jurisdiction under 28 U.S.C. § 1346 because this case involves a claim

   against agencies and employees of the federal government.

1

4.  This Court has jurisdiction under 28 U.S.C. § 1361 because the Court has jurisdiction over any case "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

5.  This Court has jurisdiction under 28 U.S.C. § 1367, except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**PARTIES**

6.  Plaintiff Corey Lea, resides in Murfreesboro, Tennessee with mailing address of P.O. BOX 422, Arrington, Tennessee 37014. (Corey Lea Inc. Dissolved) KRS 271.B 14-050.

7.  Defendant Larry Hinton is a resides in Bowling Green, Kentucky with the mailing address of 310 E. 11th Ave. Bowling Green, Kentucky 42101.

8.  Defendant FB Financial Corporation aka "First Bank" is a Tennessee Corporation authorized to business in Kentucky and Tennessee with its principal place of business located at The Baker Donelson Center, 211 Commerce Street, Suite 300, Nashville, Tennessee 37211. Agent for service of Process is CT Corp System, 300 Montvue Rd., Knoxville, Tennessee 37919-5546.

**BACKGROUND**

On October 25, 2007, Plaintiff Corey Lea Inc. purchased a farm located at 2307 New Cut Rd., Alvaton, Kentucky, First Bank (formerly Farmers National Bank) recorded the mortgage with the Warren County Kentucky Register of Deeds. On the same day, Plaintiff Corey Lea Inc. took out a second mortgage with Defendant the U.S. Department of Agriculture (USDA) for a second mortgage that was also registered with the Warren County, Kentucky Register of Deeds. The chain of events made Defendant First Bank the senior lien holder and Defendant USDA the junior lien holder.

On March 8, 2008, Defendant First Bank, refinanced the first mortgage in the names of Corey Lea, individually and Corey Lea Inc. and did not record the lien in the Warren County, Kentucky Register of Deeds. Thus, upon refinance by Defendant First Bank became the junior lienholder which again was not properly recorded. Since the first mortgage was guaranteed by Co-Defendant USDA, First Bank should have obtained permission to refinance and written approval to subordinate the second mortgage held by USDA. The refinance and the approved written subordination must be recorded with Warren County Kentucky Register of Deeds. Moreover, the stipulation of the guaranteed contract explicitly states that the guaranteed lender must obtain written permission from the agency to proceed with any foreclosure proceedings.

When the farm belonging to the Lea Plaintiffs was foreclosed on May 29, 2014, Defendants First Bank, Larry Hinton, DOJ violated Lea's right of due process, along with USDA own rules and regulations in allowing the junior lien holder, First Bank, to employ its agent Defendant Hinton to use his position within the legal community to influence the Warren County Master Commissioner, David Broderick, to conspire to deprive the Lea Plaintiffs of his farm and interest in the farm. Defendants Hinton and First Bank did not notify any other pertinent parties to attend the hearing of distribution of proceeds as it relates to the foreclosure. The Warren County Master

Commissioner included the unlawful language and the actions of the DOJ waiving the right of redemption for the Lea Plaintiffs which was the beginning of the conspiracy.

In March of 2021, the United States Congress passed the American Rescue Plan Act. Section 1005 of the Act afforded debt relief to affected farmers, such as Plaintiffs Corey Lea and Corey Lea Inc.. Section 1006 of the ARPA provides a private right of action to remedy past discriminatory actions by the Federal Defendants towards farmers who are members of a protected class. In this case, Plaintiff Corey Lea is Black and a member of a protected class. Plaintiffs Corey Lea Inc. and SFE Land and Cattle Inc. are solely owned by Corey Lea, individually.

### PROCEEDS FROM THE FORECLOSURE SALE

The Federal Defendants conceded that the Farm Ownership Loan was paid in full on October 18, 2022. In addition, the Farm Operating Loan was tied to the Farm Ownership Loan held by the USDA and was subject to the full payment before Defendant First Bank could recoup any of the proceeds. Based on USDA regulations and standard loan practices, the sales proceeds are supposed to go to the first lienholder which is USDA, however, as outlined in the Exhibit video of the distribution hearing the sales proceeds went to Hinton and First Bank. Thereby making Lea continually liable for the loan until it was paid off under ARPA.

### FORM 2601 IS SUPERSEDING CONTRACT CREATED UNDER THE ARPA

The Federal Defendants extended a contract offer to Corey Lea and Corey Lea Inc. under the ARPA to cure two separate loans. Both the ownership and the operating loans were paid off in the lump sum of $228, 083.86. However, in reality the lump sum amount did not pay off both balances of the loans because interest, fees, and penalties were accruing since the 2014 foreclosure due to the sales proceeds from the sale not being properly paid to USDA but Hinton and First Bank. Moreover, Corey Lea is a third-party beneficiary of the original first mortgage

4

held by First Bank (formerly Farmers National Bank). Corey Lea has been living in the State of Tennessee since July of 2014 after the unlawful foreclosure of his family farm in Warren County, Kentucky on May 29, 2014.

## SOME CLAIMS CAN BE SEVERED AND TRANSFERRED TO THE MIDDLE DISTRICT OF TENNESSEE

The Federal Defendants has availed themselves to the State of Tennessee by sending Corey Lea emails and operating a website that allows affected farmers to interact with the Federal Defendants on matters related to the ARPA, https://www.usda.gov/arp. In *Willock v. Hilton Domestic Operating Co. et al,* 20-cv-00042, MDTN, Judge Trauger held "Where the state long-arm statute extends to the limits of the due process clause" —as Tennessee's does—"the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates due process." Bridgeport Music, Inc. v. Still N. the Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003) (citing Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir. 1996); see also Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 627 (6th Cir. 1998). In order for this court to exercise personal jurisdiction over a non-resident defendant consistently with due process, the defendant must have had "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945))."

Again, in Willock, "the Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct grounds for personal jurisdiction. Id. at 417-18. General jurisdiction allows the court to "exercise jurisdiction over any claims a plaintiff may bring against the defendant," whereas specific jurisdiction "grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." Miller v. AXA Winterthur Ins. Co., 694 F.3d

675, 678–79 (6th Cir. 2012) (citing Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997)). "The 'paradigm' forums in which a corporate defendant" will be subject to general jurisdiction "are the corporation's place of incorporation and its principal place of business," with general jurisdiction available elsewhere only in "exceptional" cases. BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1552 (2017) (quoting Daimler AG v. Bauman, 571 U.S. 117, 136 (2014))."

### *Specific Personal Jurisdiction*

In evaluating a claim of specific personal jurisdiction, the court must apply the three-part test set forth by the Sixth Circuit in Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968): (1) "[T]he defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; (2) "[T]he cause of action must arise from the defendant's activities" in or contacts with the forum state; and (3) "[T]he acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable."

### *ANALYSIS*

1. The actions of Defendants First Bank and Hinton caused a consequence in Tennessee to Plaintiff Corey Lea in creating a tax bill for the partial payment of $228,000 made on the account of Corey Lea pursuant of the ARPA on October 18, 2022. The Federal USDA have yet to make a direct payment of 20 percent of the alleged debt owed by the Lea Plaintiffs.

2. Second, Defendant First Bank is headquartered within the jurisdiction the Middle District of Tennessee. Moreover, Defendant Hinton is an agent for First Bank. In addition, the superseding contract under the ARPA also applies to the guaranteed lender

through the principal-agent relationship. In a unanimous decision on February 23, 2010 in Hertz v. Friend, et al., No. 08-1107, --- S.Ct. ----, 2010 WL 605601, the Supreme Court clarified the test federal courts should apply to determine a corporation's citizenship for purposes of diversity jurisdiction, holding that corporations are citizens of the state their "nerve center" - usually their corporate headquarters are located in - not of any state where a plurality of their business activity occurs.

3. Lastly, Defendant Hinton is an agent of First Bank, which is located within the jurisdiction of the Middle District of Tennessee. First Bank, in an agent for the Department of Agriculture as a guaranteed lender. This set of Defendants caused a consequence creating a tax burden on Plaintiff Corey Lea during the pending litigation of this case within the State of Tennessee. The Federal Defendants are continuing to deprive Plaintiff Lea of Due Process and Equal Protection as afforded to similarly situated White farmers making this all of the Defendants who have allegedly conspired with the Federal Defendants subject to the long arm statute of Tennessee. Moreover, Defendant Hinton and the property subject to this suit are within a 100-mile jurisdiction of this Court, pursuant FRCP 4(k)(1)(b).

**CAUSES OF ACTION**

***CONTINUING RELATIONSHIPS AND OBLIGATIONS PURSUANT TO SECTION 1005 AND SECTION 1006 OF THE ARPA AND IRA***

4. As aforementioned, the ARPA, through FSA form 2601, created a contract between the Federal Defendants and the Lea Plaintiffs. The Federal Defendants agreed to pay off the alleged Senior Loan owed by Plaintiff Lea in the amount of $301,280.15 for the farm ownership loan, $61,784.94 for the farm operating loan, and $72,614.44 for tax implications. (See Ex. 1) The Federal Defendants have breached the contract by only

paying off $228,083.86 of the alleged debt and now direct payment for tax implications to the Lea Plaintiffs.

*ANALYSIS*

5. The contract created by Congress in the American Rescue Plan Act, sections 1005 and 1006, is to bind the Federal Defendants and affected Black farmers like Plaintiff Lea. Plaintiff Lea received the contract offer in July of 2021 while a resident of Tennessee for 7 years.

6. The ARPA Contractual Offer provides a private right of action that supersedes any contractual rights or duty in which the Federal Defendants maintain that the Secretary had discretion to act. It was his inactions that created the injuries to Plaintiff Lea. The State of Tennessee has a substantial interest in seeing that a private resident of its State obtains what he has bargained for.

7. The precedence to this Court as it relates to jurisdiction and out of state relations by an entity like the federal Defendants was validated when Judge Campbell denied the Defendants motion to dismiss and improper venue in *ND Acquisitions Corp v Bel Preleasing Co, LLC et al* 15-cv-0794, MDTN "With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. Burger King Corp. v. Rudzeqicz, 105 S.Ct. 21174, 2182 (1985); Vireo Systems, 2015 WL 1893461 at * 6. Where a defendant has created continuing obligations between itself and the residents of another forum, it manifestly has availed

itself of the privilege of conducting business there. Air Products and Controls, 503 F.3d at 551."

8. Furthermore, in *ND Acquisitions Corp* "Although entering into a contract with an out-of-state party alone does not automatically establish sufficient minimum contacts, the presence of certain factors in addition to the contract will be found to constitute purposeful availment. Air Products and Controls, 503 F.3d at 551. One such factor is the parties' actual course of dealing. Id." Based on the federal Defendants conduct one can construe their behavior has opens them up to this Court's jurisdiction.

9. This Court further affirms proper jurisdiction in the instant case in *ND Acquisitions Corp* in stating "Moreover, this dispute arises out of Defendants' business relationships with Plaintiff, a business in Tennessee. Plaintiff's causes of action are based exclusively on Defendants' alleged breaches of their contracts with Plaintiff. Tennessee has a substantial interest in seeing that its residents get the benefit of their bargains." USDA paying off a portion of Lea's debt, sending correspondence to his address, actively participating in the present litigation and the Court denying the DOJ motion to dismiss indicates the validity of this Court's jurisdiction.

## BREACH OF CONTRACT
### *MASTER COMMISIONER'S DEED IS NULL AND VOID*

10. On October 25, 2007, First Bank and USDA registered the ownership mortgage with the Warren County Register of Deeds in the name of Corey Lea Inc. First Bank registered as the first lienholder and USDA registered as the second lienholder on the ownership loan. On March 5, 2008, First Bank refinanced the first mortgage in the name of Corey Lea Inc. and Corey Lea, individual. However, First Bank did not register

the new deed with the Warren County Register of Deeds making them the junior lienholder to USDA. First Bank failed to properly adhere to a subordination agreement, which is required to be registered with the register of deed to keep the Bank's senior lien status. Therefore, the former second mortgage held by USDA became the first lien and First Bank became the second lien.

*ANALYSIS*

11. On page 3, section 2, of the Warren County, Kentucky foreclosure complaint, Defendant First Bank admits to refinancing the ownership loan, making them the second lienholder. On page 4, section 3, of the foreclosure complaint, Defendant First Bank actually documents recording the original mortgage deed on October 29, 2007, in the Mortgage Book 1895, Page 598, in the Warren County Clerk's Office. There is no mention of recording the refinance deed in the Warren County Clerk's Office in Section 2. (See Ex. 3, Original Foreclosure Complaint filed by First Bank, Formerly Farmers National Bank)

12. The Kentucky Courts have created a clear precedence when it comes to prohibiting junior lienholders attempting to initiate foreclosure action as if they were the senior lienholder, see *Mortg. Elec. Registration Sys., Inc. v. Mainsource Bank*, 425 S.W.3d 892, 896 (Ky. Ct. App. 2014) ("In other words, <u>KRS 426.690</u> forbids judicial sales prejudicing lienholders. Thus, property cannot be foreclosed by a junior mortgage lienholder and sold unencumbered by the senior mortgage lien of record. *Fisher v. Evans,* 175 Ky. 300, 194 S.W. 361 (1917).

13. The senior lien was paid off in the October 2022 lump sum payment, but the balance of the operating loan is still owed and under ARPA section 1005 Lea is owed debt relief

for the operating loan as well. In the present cross complaint, the Lea Plaintiffs now stand in the shoes of the Federal Defendants against First Bank and Hinton based on the doctrine of equitable subrogation. See Hensley v. Assocs. First Capital Corp. (In re Hensley), CIVIL ACTION NO. 5:13-04-KKC, 7 (E.D. Ky. Aug. 22, 2013) ("Equitable subrogation permits a creditor who pays the debt of another to stand in the shoes of the original creditor, enjoying all rights and remedies of the original creditor. Mortgage Elec. Registration Sys., Inc. v. Roberts, 366 S.W.3d 405, 408 (Ky. 2012) (quoting Wells Fargo Bank, Minn., N.A. v. Com., Fin. And Admin., Dept. of Revenue, 345 S.W.3d 800, 806 (Ky. 2011))." Since Lea was the original debtor on the loan and refinanced loan, when First Bank did not properly record the deed USDA became the first lienholder. However, once the loan was paid off in October of 2022, USDA's position was eliminated thereby being replaced by Lea under equitable subrogation. This doctrine allows Lea to bring the present a complaint against Hinton and First Bank due to USDA lack of vigor in requiring both Defendants to close out the foreclosure properly with transferring the sales proceeds to the USDA to pay off Lea's loan. Instead, Hinton and First Bank took the money which is fraudulent in nature.

14. The purpose of the fraudulent conveyance statutes in Kentucky is to place creditors in the same position they were in prior to the voidable transfer. See Mattingly v. Gentry, 419 S.W.2d 745, 747 (Ky. 1967).

15. The proper remedy for a fraudulent conveyance claim is the nullification of the transfer by returning the property at issue back to the transferor. GATX Corp. v. Addington, No. 11-122- DLB, 2012 U.S. Dist. LEXIS 64819, at *17 (E.D. Ky. May 9, 2012).

11

Regardless of the remedy sought, a direct liability of a fraudulent conveyance claim is only actionable against the transferor or transferee. Id. Although the primary remedy in a fraudulent conveyance claim is to void the fraudulent conveyance, some states allow the creditor to seek compensatory damages from a transferee as an alternative form of relief. Because "Kentucky courts have not explicitly reached this conclusion," the Court declines to extend Kentucky law to allow for compensatory damages from a transferee. Id. at *17-18. Thus, the remedy available to Isenbourg is for the Court to void the conveyances deemed fraudulent by the Court." In the instant case, this Court should void the Master's Commissioner's deed transferring it back to Lea the rightful owner.

16. The Court in Mortg. *Elec. Registration Sys., Inc. v. Mainsource Bank*, 425 S.W.3d 892, 896 (Ky. Ct. App. 2014) further held ("In order for a property at a junior mortgagee's foreclosure sale to be sold unencumbered by the senior mortgage, the foreclosing party must show in its petition to the court some reason why the senior mortgage is not actually prior and superior to the junior mortgage. *Bank of Tollesboro v. W.T. Rawleigh Co.*, 218 Ky. 516, 521, 291 S.W. 1039, 1041 (1926). For instance, the junior mortgagee could show that the senior mortgage had been satisfied or discharged, or that the mortgage was not first in time or prior and superior to the foreclosing party's mortgage. *Id.*")

17. In the foreclosure complaint, the Master Commissioner's Deed and the Order of Distribution did not state specifically why the first lien holder, Defendant USDA should not be paid as the senior lien holder. First Bank and Hinton knew they were violating the law by not recording the deed after refinance and not abiding by the regulations

during the foreclosure process in transferring sales revenue to USDA to clear the debt obligation of Lea.

### *Fraudulent Misrepresentation and Fraudulent Concealing*

18. As part of the conspiracy to commit fraud between Defendants Larry Hinton, First Bank and the Federal Defendants sought to circumvent the rules and regulations of the guaranteed loan, the Federal Defendants unlawfully waived the rights of redemption which was documented on the Master Commissioner's Deed. After the farm was sold, the Federal Defendants refused to docket the discrimination complaint of Corey Lea stating that they did not have jurisdiction to require lenders like First Bank to abide by federal regulations and due process.  The letter of denial of the discrimination complaint was not given to Corey Lea until August of 2016, enough time to allow the Kentucky Right of Redemption Statute to pass. (See Exhibit 3, email from Samantha Wiggins)

19. The letter written to private guaranteed lenders by Zach Ducheneaux and the affidavit of Carl Bonds (See Ex. 4), is at odds with the August 2016 letter where the Office of Civil Rights determination that they do not have jurisdiction to process civil rights complaints as it relates to a violation of USDAs rules and regulations in regards to federal loans. USDA, knowingly concealed the determination letter for two years to ensure the right of redemption period of two years would past to prevent Lea from redeeming the farm. In the August 2016 letter, the ASCR states that Plaintiff Lea did not specifically state that the USDA discriminated against him. Clearly, that is a fraudulent misrepresentation to further the conspiracy to deprive Plaintiff Lea of Due Process and Equal Protection of the laws. (See Ex. 5)

20. In *Watkins v. Richard Stipp Eads and Deanna Eads,* 11-ci-00211, the Kentucky Court of Appeals held "installment land sale contracts, also commonly referred to as contracts and bond for deed, are recognized as valid and enforceable contracts to finance the purchase of real property. *Sebastian,* 585 S.W.2d 381. These contracts are common in owner-financed transactions. Upon execution of an installment land sale contract, legal title to the real property remains with the seller, and equitable title to the real property passes to the purchaser. *Id.* However, Kentucky law is clear that upon default by the purchaser in an installment land contract, the purchaser does not "forfeit" his interest in the real property and, most importantly, a purported forfeiture clause stating otherwise is considered void and unenforceable. *Sebastian*, 585 S.W.2d 381."

21. Additionally, in *Watkins*, "This Court recently revisited *Sebastian* in *Slone v. Calhoun*, 386 S.W.3d 745 (Ky. App. 2012). As noted in *Slone, Sebastian* remains the controlling precedent in Kentucky regarding installment land sale contracts. Under the Sebastian rule, a real estate purchaser, who defaults under an installment land sale contract, still retains an equitable interest in the real property and further possesses redemption rights therein pursuant to Kentucky Revised Statutes (KRS) 426.530. The Kentucky Supreme Court held in Sebastian that the forfeiture provision in an installment land sale contract that provided for the forfeiture of the buyers' payment upon the buyers' default was invalid and otherwise not enforceable in Kentucky."  Lea did not willing forfeit his right of redemption powers and any other protections but was placed in a position by First Bank and Hinton to carry debt for over a decade after the illegal foreclosure when the sales proceeds should have paid off his obligation to USDA.  Instead, Hinton and First Bank, knowingly took the sales proceeds, leaving Lea liable for the debt and

struggling financially until the present day. This was all due to USDA and the DOJ complacency in the entire matter of not requiring the revenue to be transferred as the Senior lienholder.

### Violation of the Fair Debt Collection Practices Act (FDCPA)

22. Defendant First Bank knew that it had not complied with the rules and regulations of the guaranteed loan. First, Co-Defendant First Bank must have obtained written permission and submitted a liquidation plan to the USDA before they could begin any process of foreclosure. Defendant First Bank did not receive agency approval. (See Ex. 6)

23. Defendant First Bank did violate the FDCPA by conspiring with the Warren County, Kentucky Master Commissioner to waive the rights of the Lea Plaintiffs in the Master Commissioners Deed in order to not pay the senior lien holder, the Department of Agriculture-FSA. (See Ex. 7, Master Commissioners Deed and Ex. 8, Order of Distribution)

24. "[T]he FDCPA gives consumers a private right of action to enforce its provisions against debt collectors." *Macy*, 897 F.3d at 757 (citing 15 U.S.C. § 1692k(a)). To determine whether a debt collector's conduct runs afoul of the FDCPA, "courts must view any alleged violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 450 (6th Cir. 2014).

### Violation of the DC Human Rights Act

25. The Lea Plaintiffs now stand in the shoes of the Federal Defendant USDA after the land ownership loan was paid-off on October 18, 2022, to enforce proper equitable subrogation.

26. Defendant First Bank breached the loan guarantee by foreclosing on the property belonging to the Lea Plaintiffs on May 29, 2014, without receiving permission from Defendants Vilsack or the Department of Agriculture. see also D.C. Code § 12-301(1) (2012 Repl.) (statute of limitations for bringing a claim for the recovery of land is fifteen years).

27. The inaction of the DOJ as it relates to Defendants First Bank and Hinton actions in purposefully positioning themselves as a second lienholder but subrogating themselves as the first lienholder position in the foreclosure sale defrauded Lea Plaintiffs regarding not only the ownership loan but the operating loan as well. Under 42 U.S.C. 1480 Congress removed Vilsack's discretion to cure any claim regarding discrimination under a federally assisted loan like the one in the instant case with First Bank. The purposeful neglect by Vilsack proves the violation of not only USDA own rules but the DC Human Rights Act.

28. The decision not to pay the senior lien held by USDA was made in the District of Columbia where the DCHRA originated. However, as the Federal DC Court of Appeals stated in *Executive Sandwich Shoppe* case, the law must be applied beyond the District of Columbia. According to the federal DC Court of Appeals "the DCHRA was passed to 'underscore the Council's intent that the elimination of discrimination within the District of Columbia should have the highest priority,'" Executive Sandwich Shoppe, Inc. v. Carr Realty Corp., 749 A.2d 724, 732 (D.C. 2000) (emphasis added)

(quoting Dean v. District of Columbia, 653 A.2d 307, 319 (D.C. 1995)), and we have not heretofore suggested that the discrimination intended was only that whose effects an employee has experienced inside the District. To the contrary, it would be counter to the injunction that the DCHRA, as "a remedial civil rights statute," "must be generously construed," Executive Sandwich Shoppe, Inc., supra, 749 A.2d at 731, to place beyond its reach a discriminatory decision made in the District because the effects — say, a lost job or promotion — were felt only elsewhere by the employee. The gravamen of the statutory proscription is discrimination as defined; the happenstance of where the conduct works its consequences was not reasonably meant by the Council to be "the critical factual issue." Matthews, supra, 558 A.2d at 1180. See MONTEILH V. AFL V. AFSCME, AFL-CIO, 06-CV-1155, District of Columbia Court of Appeals. Kosters v. Hoover, 98 F.2d 595, 597 (D.C. Cir. 1938) (observing that "it is the fact that the purchase price is unpaid and unsecured which creates the lien").

29. Defendant First Bank did violate section § 2–1402.21(a)(1) of the DCHRA by failing to initiate the loan guarantee held by the Federal Defendants.

30. The Lea Plaintiffs were third party beneficiaries to the loan guarantee and the Federal Defendants did violate § 2–1402.21(a)(3) of the DCHRA by failing to purchase the loan held by First Bank under the authority granted to the Defendant Vilsack pursuant 42 U.S.C. 1480.

31. Defendant First Bank did violate section § 2–1402.21(a)(2) of the DCHRA by not complying with the terms of the loan guarantee such as receiving permission to foreclose and to retain advancements over $5,000 without written consent.

32. Defendant Larry Hinton did violate section § 2–1402.21(a)(1) of the DCHRA by falsely representing that the Federal Defendants agreed to allow Defendant First Bank to keep overages of the sales proceeds and newly discovered total sum of the senior lien.

33. Defendants Hinton and First Bank did violate section § 2–1402.61(a)(b) of the DCHRA by interfering and coercing with the rights of the Lea Plaintiffs enjoyment of the loan guarantee held by the Federal Defendants.

34. Defendants Hinton and First Bank did violate section § 2–1402.62 of DCHRA by aiding and abetting the Federal Defendants to unlawfully foreclose on the Lea Plaintiffs as a reward, Defendant First Bank received all the sales proceeds that belonged to the Federal Defendants and Defendant Hinton received attorney fees that were not allowed under the terms of the guaranteed loan contract.

35. For the purposes of the DCHRA section, all claims alleged are based on racial discrimination due to Plaintiff being Black and a member of a protected class.

## Unjust Enrichment and Fraudulent Conveyance

36. Defendants First Bank and Larry Hinton did fraudulently convey the real property belonging to the Lea Plaintiffs located at 2307 New Cut Rd. Alvaton, Kentucky.

37. Defendants First Bank and Larry Hinton conspired with the Warren County, Kentucky Master Commissioner, David Broderick to conceal the refinance of the first mortgage to avoid paying the senior lien held by the USDA and now Corey Lea and Corey Lea Inc.

38. Defendants First Bank and Larry Hinton received $342,400 in proceeds from the unlawful foreclosure. Defendants First Bank and Larry Hinton fraudulently induced the Warren County, Kentucky Circuit Court by entering the affidavit of Dan Harbison, in

which the court relied on, that stated the guaranteed loan allowed for First Bank to keep the overages. Defendants First Bank and Larry Hinton knew the assertion was false. The conveyance of the family farm belonging to the Lea Plaintiffs constituted a conveyance or transfer of property with the intent to defraud creditors and other persons and is therefore void per KRS [Kentucky Revised Statutes] 378.010. (See Ex 9., Order of Distribution and Circuit Court's reliance on the Affidavit of Dan Harbison stating that the guaranteed contract allows for overages and recently discovered, all of the sales proceeds to junior lienholder)

39. The purpose of this statute is to place the creditors back in the same position they enjoyed immediately prior to any voidable conveyance. *Mattingly v. Gentry*, 419 S.W.2d 245 (Ky. 1967). To obtain relief under this statute, a creditor need not show fraudulent intent. See *Combs v. Poulos*, 241 Ky. 617, 44 S.W.2d 571 (1931).

40. Overall, the Defendants First Bank and Larry Hinton conspired with the Warren County, Kentucky Master Commissioner to avoid the senior lien held by USDA and now the Lea Plaintiffs. Second, at the time of the sale the Lea Plaintiffs were the debtors, and the Federal Defendants provided a loan guarantee to Defendant First Bank to benefit the Lea Plaintiffs. Third, the Defendants First Bank and Larry Hinton transferred the property belonging to the Lea Plaintiffs without providing valuable consideration to the senior lien holder and now the Lea Plaintiffs. Fourth, the creditor existed at the time for the transfer. Lastly, Defendant First Bank did not petition the United States for the guaranteed portion of the debt it held by Lea or further follow the rules and regulations of the loan guarantee.

41. In *Madison Capital Company, LLC v. Connie Smith et al,* 3:08CV-382-H, WDKY, the court had to resolve a similar question as the one now before this court "Thus, the more precise question is whether Mr. Smith's status as a guarantor, where liability is contingent upon a future default, makes Mr. Smith a debtor of CTB on June 2, 2006, for purposes of KRS 378.020"

42. Additionally, in *Madison Capital*, "Black's Law Dictionary defines a "debtor" as "one who owes an obligation to another, esp. an obligation to pay money." Mr. Smith has been labeled a "guarantor," which Black's defines as "one who makes a guaranty or gives security for a debt." The guarantor's actual liability for payment does not begin until the principal debtor is in default. A contingent guaranty is a promise to pay a debt in the event of a specific occurrence, usually a default. To be sure, the obligation of a debtor is different than that of a guarantor....." A debtor's actual liability to payment is usually governed by a note which may not require payment until some future date. The entire amount of the debt may not be due for years or in the event of a default. Thus, the fact that a guarantor's obligation to pay is contingent (or dependent upon other events) does not make him any less a debtor in the broad sense of the term."

**43.** Lastly, in *Madison Capital*, the Court stated "these definitions demonstrate that a guarantor, while not the principal debtor, is nevertheless a debtor as the term is commonly understood, one who owes an obligation of payment to another, albeit under specific conditions. This result is consistent with the older Kentucky case, *Daniels v. Goff,* 192 Ky. 15, 20 (Ky. 1921) (finding that "existing liabilities" are broad enough to include "conditional or contingent obligations") and the recent Eastern District bankruptcy decision, In re Salyers, No. 06-10060, 2008 Bankr. LEXIS 1537, *5 (Bankr.

E.D. Ky. May 20, 2008)." The Plaintiffs have come to the conclusion in the present case USDA guaranteed the loan and as the senior lienholder USDA is primarily obligated to pay the loan off upon an event of default. In this case USDA acted in a junior holder capacity allowing First Bank to enact an illegal foreclosure upon Plaintiff Lea.

## RES JUDICATA IS NOT APPLICABLE

44. The Federal Defendants contend that this action should be subject to the principles of res judicata. This defense fails for the following reasons. As held by the Kentucky Court of Appeals in *Clemmer v. Rowan Water Inc*, 2007-ca-00355, reversing a trial court's dismissal of an action based on res judicata, the Appeals court found "It is settled that a dismissal for lack of subject matter jurisdiction does not constitute an adjudication on the merits.   Davis v. Powell's Valley Water Dist., 920 S.W.2d 75, 77 (Ky.App.1995)."

45. The Plaintiffs have alleged that the State Court Judgment was procured by Fraud and supported the claim with exhibits. In re Sun Valley Foods Co., in which the Sixth Circuit held there is "an exception to the general rule that precludes a lower federal court from reviewing a state's judicial proceedings," as a federal court "may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake." 801 F.2d 186, 189 (6th Cir. 1986) (quotation omitted). Moreover, in Riehle v. Margolies, where the Supreme Court noted that the res judicata doctrine applies "in the absence of fraud or collusion." 279 U.S. 218, 225 (1929).

46. In addition, the Plaintiffs alleged fraudulent conveyance. The Kentucky Supreme Court held in Whittaker v. Reeder, 30 S.W.3d 138, 143 (Ky. 2000) that "[w]here the statute expressly provides for reopening under specified conditions, the rule of res adjudicata has no application when the prescribed conditions are present." Stambaugh, 488 S.W.2d at 682. KRS 378. The statute provides for reopening as follows:

47. 378.010 Fraudulent conveyances and encumbrances -- Void as to whom -- Exception. Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers or other persons, and every bond or other evidence of debt given, action commenced or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons. This section shall not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

48. 378.020 Conveyance or encumbrance without consideration -- Effect. Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate without valuable consideration therefor, shall be void as to all his then existing creditors, but shall not, on that account alone, be void as to creditors whose claims are thereafter contracted, nor as to purchasers from the debtor with notice of the voluntary alienation or charge.

49. 378.030 Action on fraudulent conveyance or encumbrance of real property -- Proceedings. Any party aggrieved by the fraudulent conveyance, transfer or mortgage of real property may file a petition in equity against the parties thereto or their

representatives or heirs, alleging the facts showing his right of action, alleging the fraud or the facts constituting it and describing the property. When this petition is filed a lis pendens shall be created upon the property described, and the suit shall progress and be determined as other suits in equity and as though it had been brought on a return of nulla bona."

50. In Yeoman v. Commonwealth, the Kentucky Supreme Court described the res judicata doctrine as follows: The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. 983 S.W.2d 459, 464 (Ky. 1998) (quoting 46 Am. Jur. 2d Judgments § 514).

51. Kentucky courts can determine that a particular conveyance was made fraudulently, even if the subject property was located in another state. See, e.g., Lewis v. Barber, 49 S.W.2d 328, 328–29 (Ky. 1932) (holding that a son's conveyance to his father of a tract of land in Ohio was fraudulent). And they can even order remedies for unwinding this transfer. See Becker v. Becker, 576 S.W.2d 255, 257 (Ky. Ct. App. 1979) (noting that while a Kentucky court could not act to directly convey real property outside the boundaries of the Commonwealth, a court with in personam jurisdiction over a party could compel that party to convey real property in another state (citing Fall v. Eastin, 215 U.S. 1 (1909))). In the instant case, the Federal Defendants do not argue that this Court does not have jurisdiction.

52. See New Domain Oil & Gas Co. v. McKinney, 221 S.W. 245 (1920) (concluding that the validity of a contract for the sale of land by a minor was governed by the laws of the state in which the land is located); United States v. Westley, 7 F. App'x 393, 399 (6th Cir. 2001) (applying Tennessee's fraudulent conveyance law for a fraudulent conveyance of personal—not real— property because the transferor and transferees were residents of Tennessee). Indeed, one case supports applying Kentucky law. Lykins Enters., Inc. v. Felix, 2007 WL 4139637, at *5 (Ky. Nov. 21, 2007) (citing Becker for the proposition that a Kentucky court may exercise its in personam jurisdiction over the parties to order the transfer of realty located in another state).

53. This Sixth Circuit has resolved this question. In *Canaday v. The Anthem Companies,* 20-5947, the Court held "A court may assert "general," or "all-purpose," jurisdiction over a defendant in its home State, where the defendant is incorporated or headquartered. BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017). Or a court may exercise "specific," or case-based, jurisdiction over a defendant if the plaintiff's claims "arise[] out of or relate[] to" the defendant's forum State activities. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (quotation omitted)." No defendant in the instant case has argued that Defendants Mike Van Dyke or First Bank is not domiciled within this district. The consequences of tax burdens placed on the Lea Plaintiffs after the payment made by the Federal Defendants to the account of Lea on October 18, 2022 and denial of equal protection of the Meat Inspection Act, combined with the continuing violations doctrine of making Plaintiffs Lea and SFE Land and Cattle Co ineligible for future federal assistance took place within this district.

54. Examples of the general jurisdiction cases include: Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 710 (1986); Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 730 (1981); Iowa Beef Packers, Inc. v. Thompson, 405 U.S. 228, 228 (1972); Maneja v. Waialua Agric. Co., 349 U.S. 254, 256 (1955); Thomas v. Hempt Bros., 345 U.S. 19, 20 (1953); Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 698 (1947); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 701 (1945).  Some examples of specific jurisdiction cases include: Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2124 (2016); Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 447 (2016); Integrity Staffing Sols., Inc. v. Busk, 574 U.S. 27, 29 (2014); Sandifer v. U.S. Steel Corp., 571 U.S. 220, 222–23 (2014); Christensen v. Harris Cnty., 529 U.S. 576, 580 (2000).

55. Again in Canaday, "It places territorial limits on a defendant's amenability to effective service of a summons by a federal district court, tying personal jurisdiction over a defendant to the host State's jurisdiction over it. Daimler, 571 U.S. at 125 (noting that the federal rules ordinarily require federal courts to "follow state law in determining the bounds of their jurisdiction over persons"). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Cap., 484 U.S. at 104. Any suggestion that Civil Rule 4(k) does not implicate jurisdiction or does not apply to federal claims is belied by the rule's reference to "personal jurisdiction" in Civil Rule 4(k)(1) and its reference to federal claims involving defendants not subject to "any state's courts of general jurisdiction" in Civil Rule 4(k)(2)."

25

DAMAGES FOR FAILURE TO RELEASE LIEN PURSUANT K.R.S. 382.365

**$500 per day starting September 1, 2014 and continuing**

56. On October 25, 2007, the Lea Plaintiffs entered binding contract with Defendant Department of Agriculture, (See Ex. Mortgage Instrument).

57. Para. 30 on page 5 reads- **"Satisfaction of Mortgage. –** Upon satisfaction/termination of this mortgage, the "Government" at the Borrower's expense and only upon receipt of the appropriate filing fee, shall execute and file of record such instrument of release, satisfaction, and termination in proper form pursuant to the requirements contained in K.R.S. 382.365."

**Kentucy's Recording System**

58. KRS Chapter 382 provides a system by which landowners record ownership of property through deeds, mortgage owners preserve priority and landowners remove encumbrances from their property once underlying debts are satisfied. Each step is codified as follows: Recording of deeds that are "acknowledged by the part[ies] who execute [them]" and "proved and lodged for record in the proper office, as prescribed by law." KRS 382.080. The statutes also provide for recording of mortgages, which, like deeds, are recorded in "the county clerk's office of the county in which the property ... is located." KRS 382.110. Instruments generally must indicate the "next immediate source from which the grantor derived title to the property or the interest conveyed therein," thereby showing the chain of title. Id. Instruments which satisfy these requirements and are properly acknowledged are recorded by the County Clerk. KRS 382.130.

59. Chapter 382 further provides for recording of releases and assignments of mortgages in certain circumstances. A mortgage can be released by recording a deed of release or by entering a marginal notation on the mortgage instrument. KRS 382.360(1) (2)). Similarly, a mortgage may be assigned by a deed of assignment. KRS 382.360(3)). Failure to record a mortgage assignment has no effect on the validity or perfection of the mortgage. KRS 382.360(6)).

60. If the borrower pays her loan in full, but the lienholder does not timely release the mortgage, the borrower may sue to compel release of the mortgage and the recording of an intervening mortgage assignment required for the release. KRS 382.365(3)-(5). The statutory scheme ensures that, as a general rule, a mortgage recorded first has priority over a mortgage recorded later. MERS v. Roberts, 366 S.W.3d 405, 411 (Ky. 2012).

61. Recording of mortgages allows mortgage-holders to stake their claims to priority, although the records do not serve as a source of information about lenders; indeed, "[t]he identity of the lender is not truly relevant to whether the purposes of the recording statutes are being promoted." Id. at 413.

62. The Sixth Circuit recognizes an implied right of action under KRS 446.070, ruling that Kentucky's recording statutes protect three distinct groups of persons: (1) existing lienholders and lenders ...(2) prospective lienholders and purchasers, and (3) property owners and borrowers whose loans have been satisfied. Ld

## CAUSE AND EFFECT

63. Plaintiff Lea alleged that Defendants Hinton and First Bank engaged in conduct to fraudulently induce a Court to unlawfully enter a judgment against the Lea Plaintiffs. First by not notifying the Lea Plaintiffs of the hearing and secondly stating that the guaranteed contract allowed for getting the overages of the sales proceeds of the farm belonging to Lea. As pointed out, it has been recently discovered that Defendants Hinton and First Bank conspired with the Federal Defendants to unlawfully foreclose from the junior lienholder position. In furtherance of the conspiracy, Defendant Hinton used his position in the local legal community to conspire with the Warren County, Kentucky Master Commissioner to create a deed that would allow Defendants FirstBank not to pay the senior lienholder, Defendant United States.

64. With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. Burger King Corp. v. Rudzeqicz, 105 S.Ct. 21174, 2182 (1985); Vireo Systems, 2015 WL 1893461 at * 6. Where a defendant has created continuing obligations between itself and the residents of another forum, it manifestly has availed itself of the privilege of conducting business there. Air Products and Controls, 503 F.3d at 551.

65. Purposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities. Bridgeport Music, Inc. v. Still N the Water Publishing, 327 F.3d 472, 478 (6th Cir. 2003). Accordingly, the cause

of the claim has a nexus rooted in the ARPA and Breach of Contract in which Defendant is subject to the theory of principal-agent relationship. First Bank is an instrument and agent of the Federal Defendants, now Plaintiff Lea stand in the shoes of the Federal Defendants due to the farm ownership loan being paid in full on October 18, 2022. In addition, while standing in the shoes of the Federal Defendants, Plaintiff Lea can enforce the guaranteed contract directly or as a third-party beneficiary.

66. *Yarbrough v. Quince Nursing & Rehab. Ctr.*, 2:22-cv-02126-TLP-tmp, 7 (W.D. Tenn. Jul. 18, 2022) ("A nonresident defendant need not be "physically present in the forum state" for a Court to have personal jurisdiction over that defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996). "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).")

67. The effect is simple, Defendants Hinton and First Bank conspired with the Federal Defendants and the Warren County, Kentucky Master Commissioner to fraudulently transfer a deed in which Defendant First Bank was a junior lienholder. The Federal Defendants, in turn, kept a debt against Corey Lea and Corey Lea Inc, so that he could not get any future federal assistance. Plaintiffs Corey Lea, Corey Lea Inc., and SFE Land and Cattle could have been criminally charged by the federal defendants for applying for a grant if the alleged debt owed to the federal defendants. Therefore, Defendants Hinton and First Bank are liable for the damages incurred.

**A Declaratory Judgment that the May 29, 2014, Sale was Unlawful and the Master Commissioners Deed is Null and Void based on KRS 378.20**

68. USDA and the Lea Plaintiffs are seeking an Order from this Court declaring the Warren County, Kentucky Master Commissioner's Deed conveying the property, as described above, belonging to the Lea Plaintiffs Null and Void and Return the Farm to Plaintiff Lea.

## PRAYER OF RELIEF

A. The sum of $2,500,000 from Defendant First Bank;

B. The sum of $2,500,000 from Defendant Larry Hinton;

C. Punitive Damages;

D. Treble Damages;

E. Compensatory Damages:

F. An Order Declaring the Warren County, Kentucky Master Commissioner's Deed Null and Void; Return Farm Belonging Back To Plaintiff.

G. And any other relief the Court deems fit.

Respectfully Submitted,

Corey Lea
P.O. Box 422
Arrington, Tn. 37014
615 308 7787

## CERTIFICATE OF SERVICE

Larry Hinton
310 E. 11th Ave
Bowling Green, Kentucky 42101


FB Financial Corporation aka "First Bank"
The Baker Donelson Center,
211 Commerce Street, Suite 300,
Nashville, Tennessee 37211.


CT Corp System, 300 Montvue Rd.,
 Knoxville, Tennessee 37919-5546.